ALBANY,
August, 1816.

JACKSON
v.
SOWLE.

JACKSON, ex dem. LUDLOW & KETCHAM, against SOWLE &
SOWLE.

The northern boundary of the patent *to Sanders & Heermance,* forms the southern boundary of the *Nine Partners Patent,* and there is no intermediate space, or *gore,* between the two patents.

THIS was an action of ejectment, for land lying in the county of *Dutchess.* The cause was tried at the *Dutchess* circuit, in *August,* 1814, before his honour the Chief Justice, and a verdict was taken for the plaintiff, subject to the opinion of the court, on a case containing the following facts :

On the 24th of *October,* 1686, a patent was granted by the government of the province of *New-York,* to *Sanders & Heermance,* for twelve thousand acres of land. Questions having afterwards arisen as to the quantity of land which was intended to be granted to patentees, a number of persons, who had purchased under that patent, applied to the governor and council for a confirmation of their titles, which petition being granted, a warrant of survey, to the surveyor-general of the province, was issued, dated the 23d of *January,* 1770, directing the farms of the petitioners, among whom was one *David Reed,* to be surveyed, and, on the 4th of *June,* 1772, a patent was issued to *David Reed,* for a lot of land described as follows : " All that certain lot and parcel of land, situate, lying, and being in the county of *Dutchess,* within our province of *New-York,* bounded on the north by a line of marked trees run by the *Nine Partners ;* on the south, by a line of marked trees known by the name of the *Indian* line ; and, on the east, by a tract of land granted to *Rumbout & Company,* beginning at a walnut tree, with stones round it, in a line of trees marked for the westerly bounds of the aforesaid tract, granted to *Rumbout & Company,* known by the name of the parallel line, and runs from the said walnut tree, along the aforesaid *Indian* line of marked trees, north, forty-nine degrees west, twenty-seven chains, north, fifty-four degrees west, twenty-three chains, to a forked white-oak tree standing on the east side of the *Twede* fly, and to the northward of a small hill, thence north six chains and seventeen links, to the aforementioned line of marked trees, known by the name of the *Nine Partners* line, thence along said line, south, 88 degrees, east, 66 chains and 60 links, to the aforementined parallel line, the westerly bounds of *Rumbout & Company,* thence

along said parallel line, southerly, as it runs, to the place where this lot first began; containing 100 acres of land, and the usual allowance for highways." The lessors of the plaintiff derived their title from *Reed*.

The defendants claimed title to the premises in question, under the patent to *Caleb Heathcoat* and others, commonly called the *Great Nine Partners Patent*, dated the 27th of *May*, 1697, for a tract of land described as follows : "A certain tract of vacant land situate, lying, and being on *Hudson's* river, within our *Dutchess* county, bounded on the west by the said *Hudson's* river, between the creek called, by the *Indians*, *Aquasing*, and, by the Christians, the *Fish* creek, at the marked trees of *Pauling*, (including the said creek,) and the land of *Myndert. Harmense-* [*Heermance*] and company, then bounded southerly by the land of the said *Myndert Harmense* and company, so far as their bounds goes, then westerly by the land of the said *Harmense* and company, until a southerly line run so far south until it comes to the south side of a certain meadow, wherein there is a white oak marked with the letters H T, then southerly, by an east and west line, to the division line between this our province and our colony of *Connecticut*, and so easterly by the said division line, and northerly by the aforesaid *Fish* creek, as far as it goes, and from the head of the said creek, by a parallel line, to the south bounds, east and west, reaching the aforesaid division line."

The case made for the opinion of the court contained a great deal of obscure and contradictory testimony relating principally to the possessory title set up by the parties. It is thought that the above statement, as to the paper title, on which alone the court founded their decision, with such facts as are alluded to in the opinion of the court, will sufficiently explain the points of the case. It was contended, on the part of the plaintiff, that the land in question was included in a tract called the *Gore*, alleged to lie intermediately between the patent of *Sanders &* *Heermance*, and the *Nine Partners* patent; and, on the other hand, it was insisted that the premises were comprehended within the *Nine Partners* patent.

The case was argued by *J. Emott*, for the plaintiff, and by *P. Ruggles*, and *J. Tallmadge*, for the defendants.

ALBANY,
August, 1816.
JACKSON
v.
SOWLE.

*Per Curiam.* The plaintiff sets up a right to recover on two grounds, 1st. Upon his paper title; 2d. On his possession.

It is manifest there can be no *gore* between *Sanders & Heermance's* patent, and that called the *Nine Partners* patent; the latter is bounded on the former. All the evidence shows, (and it has not been pretended on the argument,) that the premises do not lie within *Sanders & Heermance's* patent; it is equally certain that a line called the *Indian* line, is the well-known northern boundary of that patent: indeed, in the patent to *Reed*, this line is expressly recognised. The description of the land granted by the *Nine Partners* patent, strongly corroborates the location given by the defendants. The south line is not a straight line; the *Sanders & Heermance* patent is a southerly boundary, so far as it goes, and then it becomes a westerly boundary, which could not happen unless there was a deviation in the line. The line set up by the plaintiff, as the south line of the *Nine Partners* patent, is a straight line, which is in direct opposition to the expressions in that grant.

It appears, pretty satisfactorily, how the line set up by the plaintiff, as the south line of the *Nine Partners* patent, came to be run as it was. The proprietors, many years since, laid out a tier of water lots on the river, extending four miles back. These were straight lines, extending beyond where the south line of the patent changed its course, and, therefore, not affecting the land lying to the south of this line; and the *Sanders & Heermance* patent, confessedly, not extending north of the *Indian* line, gave rise to the idea that the intermediate lands were a gore, and vacant, when, in truth, there could be no such thing.

If it were not satisfactorily explained how, and for what purpose, this line was run, it might be deemed a location by the patentees, of their south boundary, but the facts in the case preclude this conclusion; for it appears that they have claimed and exercised acts of ownership over what is called the gore. It follows that the plaintiff has failed in showing a paper title to the premises, inasmuch as the premises are comprehended in an older patent to the *Nine Partners*. If other considerations were necessary to evince the plaintiff's want of title, it is a strong circumstance, that since the erection of towns in this state the tract of land called the great or *Lower Nine Partners*, has been the boundary recognised by the legislature, between the towns

of *Poughkeepsie* and *Clinton*, and the lands in question are described in the designation as lying in *Clinton*.

As to the possessory right, it would be excessively uninteresting, if not disgusting, to go through and present the confused mass of evidence in relation to it. Suffice it to say, that none of the possessions, prior to those of the defendant's father and of *Thorn*, are definite or continued, but are wholly vague, equivocal and uncertain; sometimes the possession is under the *Nine Partners*, and sometimes under *Reed* and *Ludlow*, and sometimes the possessors are mere intruders. Such a heterogeneous possession ought not to avail against a clear paper title, in opposition to that of the lessors, as no immediate privity is pretended between the lessors and the defendants.

Judgment for the defendants.